UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

UNITED STATES OF AMERICA,

                      - against -

SHARIF LUCAS,

                      Defendant.

**MEMORANDUM & ORDER**
22-CR-290 (MKB)
19-CR-467 (MKB)

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Defendant Sharif Lucas is scheduled to be sentenced on June 27, 2023 based on his plea of guilty to being a felon in possession of ammunition in violation of Title 18, United States Code, Section 922(g)(1), and violating the terms of his supervised release. In its sentencing submission, the Government argues that the Court should apply the attempted murder cross-reference set forth in the United States Sentencing Guidelines ("USSG") Section 2A2.1 because Lucas attempted to murder a victim with the ammunition that is the source of his conviction. (Gov't's Sent'g Mem. 7–15, Docket Entry No. 18.) The Court held a *Fatico* hearing on June 13, 2023, and heard testimony from Special Agent Max Dougal, reviewed video surveillance, and heard arguments from the parties. (Minute Entry dated June 13, 2023.)

      For the reasons set forth below, the Court finds that the Government has not shown by a preponderance of the evidence that Lucas had the specific intent required for the attempted murder cross-reference to apply, and therefore declines to apply the cross-reference.

I. **Factual background**

The facts in this case are not disputed, only Lucas' intent is disputed. On June 9, 2022, Lucas traveled to 1607 Prospect Place in Brooklyn, New York, waited in the lobby while looking out the door onto the street, and upon seeing the victim walking on the street toward his location, exited the lobby and fired several shots at the victim, turned and saw other individuals and fired at them,[1] before fleeing the scene of the crime. (Tr. of Crim. Cause for Fatico Hr'g ("Tr.") 15:8–17:20.) Although the firearm was never recovered or the victim identified, New York City Police Department officers recovered cartridge cases from the scene of the shooting and Lucas was ultimately charged with and pleaded guilty to being a felon in possession of ammunition. (Presentence Investigation Report ("PSR") 3, Docket Entry No. 13; Tr. 9:4, 33:21–34:2.) In addition, at the time of the shooting, Lucas was serving a term of supervised release for a prior conviction for being a felon in possession of a firearm. (PSR 10.)

II. **Discussion**

The government has failed to prove that Lucas had the specific intent necessary to murder or attempt to murder the unidentified victim when he shot at the victim from a distance.

To prove attempted murder, the government must prove specific intent to kill. *Braxton v. United States*, 500 U.S. 344, 351 n.* (1991); *United States v. Stroman*, 420 F. App'x 100, 105 (2d Cir. 2011) ("*Stroman I*") (citing *Braxton*, 500 U.S. at 351 n.*). In addition, first-degree murder requires a "willful, deliberate, malicious, and premeditated killing." *United States v. Whiteside*, 207 F. Supp. 3d 311, 320 (S.D.N.Y. 2016) (quoting 18 U.S.C. § 1111(a)); *United States v. Cespedes*, No. 11-CR-1032, 2015 WL 4597539, at *2 (S.D.N.Y. July 30, 2015) (same);

---

[1] Because there is no evidence that Lucas' shooting at these individuals was anything other than a spur of the moment decision, the Court does not consider this shooting in its analysis. The Government has not argued otherwise.

2

*see also United States v. Delaney,* 717 F.3d 553, 556 (7th Cir. 2013) ("The only difference between the two degrees of murder, sharing as they do the requirement that the murderer have acted with 'malice aforethought,' is . . . that a first-degree murder . . . must be 'premeditated.'").

For the cross-reference for attempted murder to apply, the court must be able to conclude by a preponderance of the evidence that the defendant actually intended to kill his victim. *United States v. Stroman*, 598 F. App'x 67, 69 (2d Cir. 2012) (explaining that the district court had to conclude, by a preponderance of the evidence, that the defendant shot his gun with the intent to kill at least one of the victims) (first citing *Braxton*, 500 U.S. at 351 n.*;then citing *Stroman I*, 420 F. App'x at 105); *see also Braxton*, 500 U.S. at 351 n.* ("[A]ttempt to commit murder requires a specific intent to kill."). Usually, intent to kill is proven by circumstantial evidence. *United States v. Kwong*, 14 F.3d 189, 194 (2d Cir. 1994); *United States v. Muyet*, 994 F. Supp. 501, 517 (S.D.N.Y. 1998).

Premeditation requires "a cool mind" capable of reflection and "some appreciable time for reflection and consideration before execution of the act." *Cespedes*, 2015 WL 4597539, at *3 (citation omitted); *see also Delaney,* 717 F.3d at 556 ("[[P]remeditation requires that 'an appreciable time elapse between formation of the design and the fatal act within which there is, in fact, deliberation.'" (quoting *Fisher v. United States*, 328 U.S. 463, 469 n.3 (1946)); *see also United States v. Mulder*, 273 F.3d 91, 117 (2d Cir. 2001) (noting the Second Circuit has not defined premeditation or first-degree murder, but approvingly citing out of circuit cases that have held that premeditation requires that one act with a "cool mind" and "reflect at least for a short period of time before his act of killing" and that particularly cruel or brutal crimes raise an inference of malice (quoting *United States v. Shaw*, 701 F.2d 367, 393 (5th Cir.1983)). What is important is not the amount of time that elapsed, but only that the defendant deliberates before

3

committing the fatal act. *Cespedes*, 2015 WL 4597539, at *3 (first citing *United States v. Brown*, 518 F.2d 821, 826 (7th Cir. 1975); then citing *United States v. Catalan-Roman*, 585 F.3d 453, 474 (1st Cir. 2009)).

The evidence establishes that Lucas' shooting at the victim was premeditated and deliberate. As established at the *Fatico* hearing, he drove to the scene of the crime, with a gun, waited behind the apartment building door looking for the victim, exited the building, took aim and began shooting at the victim once he saw the victim. (Tr. 15:8–17:20.) *See United States v. Rodriguez*, 738 F. App'x 729, 730 (2d Cir. 2018) (finding premeditation where the defendant brought a firearm to the scene, concealed his presence and waited for a specific vehicle to approach before shooting into the vehicle); *Cespedes*, 2015 WL 4597539, at *4–6 (finding premeditation where the defendants armed themselves, drove for ten to twenty minutes to another part of the Bronx and searched for the victim for ten to fifteen minutes before launching the attack).

However, the evidence fails to establish that Lucas intended to kill the victim. First, contrary to the Government's suggestion at the *Fatico* hearing and in its most recent submission to the Court, the government must prove both that the defendant acted deliberately, or with premeditation, and with specific intent to kill — in other words, the offense must constitute a premeditated murder. *United States v. Wood*, 207 F.3d 1222, 1228 (10th Cir. 2000) (explaining that first-degree murder requires specific intent to kill and premeditation, whereas second-degree murder only requires specific intent to kill); *Cespedes*, 2015 WL 4597539, at *3 (explaining that first-degree murder requires specific intent to kill and premeditation). While some evidence may be relevant to both elements, simply because a defendant acted with premeditation, does not mean that he had the specific intent to kill or that the act constituted premeditated murder. *See*

4

*Cespedes*, 2015 WL 4597539, at *3 (explaining that while the evidence established a "premeditated attack," it did not establish "premeditated murder" because of the lack of evidence of specific intent to kill).

Although the evidence establishes that Lucas intended to and did in fact shoot at the victim, the evidence does not establish that Lucas intended to kill the victim. As counsel for Lucas argued at the *Fatico* hearing, Lucas could have waited until the victim was closer to him before revealing himself and shooting at the victim, and he could have run after the victim, but he did none of those things. Instead, he fired the weapon at the victim while the victim was still more than twenty feet away from him (see discussion below) and there is no evidence that any of the bullets actually hit the victim. The Court can reasonably infer from Lucas' actions that he intended to scare the victim which he appears to have done, as the victim attempted to take cover and fled the location after Lucas began shooting at him. The Court can also reasonably infer that Lucas intended to injure the victim as he was attempting to shoot at the victim. *See id.* (finding that the evidence established that the defendants had intent to injure rather than to kill).

However, in view of the fact that Lucas fired a weapon while standing at a substantial distance from the victim — at least three car lengths, did not pursue the victim even though he was aware that the victim was likely not hit by any of the bullets fired, and instead fled the scene of the crime after he observed the victim flee in a different direction, the Court cannot infer that Lucas intended to kill the victim. There is simply insufficient evidence to support specific intent. In the cases relied on by the Government, unlike Lucas' actions, the defendants shot at the victims "at close range." *See United States v. Shipp*, No. 21-CR-1284, 2022 WL 16543193, at *2 (2d Cir. Oct. 31, 2022) (affirming district court's application of the cross-reference where the defendant "shot his victim at close range, chased him, stood over his collapsed body and pointed

a gun at him as he begged for his life, and left the scene only after the gun jammed"); *Rodriguez*, 738 F. App'x at 730 (relying on the fact that the defendant fired "four shots into the vehicle at close range" in finding specific intent to kill); *United States v. Stroman*, 498 F. App'x 67, 68 (2d Cir. 2012) (affirming the cross reference where the video showed that the defendant chased the defendants into a bodega and shot at them); *United States v. Atehortva*, 69 F.3d 679, 687 (2d Cir. 1995) (finding that "[g]iven the undisputed evidence that [the defendant] repeatedly fired a gun at federal agents from close range," the district court properly determined at sentencing that the defendant's actions "constituted attempted murder"); Sent'g Tr. at 33–34, *United States v. Williams*, No. 20-CR-404 (May 16, 2023) ("[T]he evidence demonstrates that he ran up behind them and shot them at close range. And the law suggests that that is enough to show intent here. . . . From his actions, it suggests that he intended to kill these individuals."). In *Williams*, in applying the cross reference, the Court noted that the defendant not only chased the victims and fired at them from a close distance, he also hit the victims. (*Id.* at 34.)

The Government has not provided a clear estimate of the distance from which Lucas shot at the victim and the video evidence does not establish that the shooting was at close range.[2] *See United States v. Legros*, 529 F.3d 470, 474 (2d Cir. 2008) (explaining that the government bears the burden to show that the defendant committed another offense by a preponderance of the

---

[2] At the *Fatico* hearing, the FBI agent acknowledged that the distance between Lucas and the victim was over twenty feet but testified that he was unsure whether it was over thirty feet. (Tr. 40:15–17, 44:12–14.) The Government in its briefing appears to accept Lucas' argument that the distance was approximately three car lengths, which would be well over thirty feet. The Government also describes Lucas' distance from the second group of individuals as three car lengths away, but the video and photos suggest the distance was greater and the FBI agent agreed that the distance was thirty to fifty feet away. As explained earlier, the Government has not shown premeditation as to the second set of individuals and the Court therefore only considers the first victim in its analysis.

6

evidence for the enhancement to apply). Lucas argues that the shooting was from three car lengths or forty feet away and the Government has not shown otherwise. *See* Tr. of Conf., *United States v. Escort*, No. 21-CR-387 (S.D.N.Y. Feb. 7, 2022) (refusing to apply the cross reference because the court could not find that the shots were fired within close range, as the victim was further than twenty feet away or around three car lengths away); *see also Rice v. Hoke*, 846 F.2d 160, 161 (2d Cir. 1988) (describing fifteen to twenty feet as close range). Further, the video does not show where the bullets fell or clearly establish the trajectory of the gunshots. *See United States v. Williams*, No. 19-CR-5 (E.D.N.Y.) (explaining that it was difficult to determine the direction that the defendant was shooting in and the defendant's proximity to the vehicle in declining to apply the cross reference).[3]

Other than the fact that Lucas fired three shots in the general direction of the victim from approximately three car lengths away, there is no other evidence of specific intent to kill. Because the Court can equally infer that Lucas intended to frighten or injure the victim, the record before the Court is insufficient to support the conclusion that Lucas had specific intent to kill the victim.[4] *See United States v. Jackson*, 351 F. Supp. 2d 108, 114 (S.D.N.Y. 2004) ("To find a person guilty of attempted murder, let alone of attempted murder in the first degree, requires a detailed inquiry into the state of mind and circumstances of a killing, which the casual

---

[3] The summary of this case is based on the parties' submissions.

[4] At a jury trial, there would be presumably more evidence from which the jury could conclude that the defendant had specific intent to kill. *See* Sent'g Tr. 36:22–40:10, *United States v. Powell*, 21-CR-205 (E.D.N.Y. Mar. 6, 2023) (explaining that the question of intent was better suited for the jury trial and that the court could not make the requisite finding that the defendant had specific intent to kill based on the surveillance video alone); *United States v. Jackson*, 351 F. Supp. 2d 108, 114–16 (S.D.N.Y. 2004) (explaining the problems with the court making a finding as to the defendant's intent without a jury trial and accordingly declining to make such a finding).

characterizations of the parties here do not even begin to make possible."); *see also* Sent'g Tr. 36:22–40:10, *United States v. Powell*, 21-CR-205 (E.D.N.Y. Mar. 6, 2023) (declining to apply attempted murder cross-reference where defendant waited behind a tree and aimed at an occupied car from across the street (from approximately thirty feet away) because the only evidence available to the court to discern the defendant's intent was the surveillance video and given the proximity (or lack thereof) and lack of other evidence of intent to kill, the court was "exactly on the fence" as to whether the defendant had intent to kill); *United States v. Tartt*, No. 20-CR-339 (S.D.N.Y. Jan. 10, 2022) (denying attempted murder cross-reference where defendant "shot at the victims at least twice" but missed and did not keep shooting, but applying the aggravated assault cross reference after finding the defendant had intent to injure, rather than just intent to frighten).

### III. Conclusion

For the reasons explained above, the Court finds that the Government has not shown by a preponderance of the evidence that the attempted murder cross-reference pursuant to U.S.S.G. 2A2.1 should be applied to the facts of this case.

Dated: June 26, 2023
      Brooklyn, New York

SO ORDERED:

/s/ MKB
MARGO K. BRODIE
United States District Judge

8